# 12-2687-cr

## United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

MICHAEL JAMES,

*Defendant-Appellant,*

– and –

VINCENT LAWRENCE,

*Defendant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR
## DEFENDANT-APPELLANT

FISHER, BYRIALSEN & KREIZER PLLC
*Attorneys for Defendant-Appellant*
291 Broadway, Suite 709
New York, New York 10007
(212) 962-0848

TABLE OF CONTENTS

TABLE OF CONENTS………………………….……………………i

TABLE OF AUTHORITIES………………….…………………...…iii

JURISDICTIONAL STATEMENT …………………………………1

ISSUES PRESENTED ……………………………………………1

STANDARD OF REVIEW ………………………………………..2

STATEMENT OF FACT …………………………………………3

    Indictment …………………………………………………...3

    Plea Agreement and Plea …………………………………4

    Motions in Limine……………………………………………..5

    Trial……………………………………………………………6

    Conviction …………………………………………………9

ARGUMENT

        POINT I:  THE DISTRICT COURT COMMITTED REVERSIBLE
        ERROR WHEN IT REFUSED TO ACCEPT MR. JAMES' GUILTY
        PLEA ON JANUARY 10, 2012……………………………10

        POINT II: THE DISTRICT COURT'S ADMISSION OF PRIOR
        BAD ACTS WITHOUT ENGAGING IN THE BALANCING TESTS
        REQUIRED BY FRE RULES 403 AND 404(b) AND WITHOUT
        PROVIDING A LIMITING INSTRUCTION WAS REVERSIBLE
        ERROR……………………………………………………27

THE DISTRICT COURT COMMITTED REVERISBLE
ERROR WHEN IT ADMITTED EVIDENCE OF THE
DECEMBER 2005 INCIDENT AND THE DECEMBER 2010
INCIDENT WITHOUT ENGAGING IN THE BALANCING
TESTS REQUIRED BY FRE RULES 403 AND 404(b) AND
WITHOUT PROVIDING A LIMITING INSTRUCTION WAS
REVERSIBLE ERROR……………………………………..28

THE DISTRICT COURT COMMITTED REVERSIBLE
ERROR WHEN IT ADMITTED THE TESTIMONY OF
ANDRE DAVIDSON REGARDING PRIOR BAD ACTS
WITHOUT ENGAGING IN THE BALANCING TESTS
REQUIRED BY FRE RULES 403 AND 404(b)……………36

POINT III: THE DISTRICT COURT COMMITTED REVERSIBLE
ERROR WHEN IT ADMITTED EVIDENCE THAT MR. JAMES
STORED MARIJUANA IN THE A BACKPACK CARRIED BY
HIS TWELVE-YEAR-OLD DAUGHTER………………………...40

CONCLUSION……………………………………………………………..42

## TABLE OF AUTHORITIES

CASES

*Cf. Roldan-Zapata,* 916 F.2d 795 (2d Cir. 1990)……………………...………38

*Huddleston v. United States*, 485 U.S. 681 (1988) ……………………..……...28, 34

*Irizarry v. United States*, 508 F.2d 960,967 (2nd Cir. 1975)……………...……23

*McCarthy v. United States,* 394 U.S. 459, 471 (1969) …………….….…………2

*Old Chief v. United States*, 519 U.S. 172 (1997)……………………….….……40

*United States v. Andrades,* 169 F.3d 131(2d Cir. 1999)…………….….………24

*United States v. Awadallah,* 436 F.3d 125 (2d Cir. 2006)…………………..……3

*United States v. Blackwell,* 199 F.3d 623 (2d Cir. 1999)……………………24

*United States v. Birney,* 686 F.2d 102 (2d Cir. 1982)………………...…………3

*United States v. Brand*, 467 F.3d 179 (2d Cir. 2006) …………….……………33

*United States v. Culbertson*, 670 F.3d 183 (2d Cir. 2012)………………..……..2

*United States v. Figueroa*, 618 F.2d 934 (2d Cir. 1980)……………………34

*United States v. Garcia*, 291 F.3d 127 (2d Cir. 2002)   …………….…….30, 36

*United States v. Gilan*, 967 F.2d 776, 783 (2d Cir. 1992)…………….……..34

*United States v. Gordon*, 987 F.2d 902 (2d Cir. 1993)……………….......………35

*United States v. Levy*, 731 F.2d 997 (2nd Cir. 1984)……………….……………2, 33

*United States v. Maher*, 108 F.3d 1513 (2d Cir. 1997)……………….……....22, 23

*United States v. McFadden*, 238 F.3d 198 (2d Cir. 2001)……………….……23, 24

*United States v. O'Hara*, 960 F.2d 11 (2d Cir. 1992)……………………….……24

*United States v. Peterson*, 808 F.2d 969 (2d Cir. 1987)……………………..34

*United States v. Quattrone*, 441 F.3d 153 (2d Cir. 2006)……………..…………..34

*United States v. Rodriguez* 943 F.2d 215 (2d Cir. 1991)……………………..33, 35

*United States v. Salameh,* 152 F.3d 88 (2d Cir. 1998) ……………...…………….3

*United States. v. Smith,* 160 F.3d 117 (2d Cir. 1998) ……………...………..2, 24

STATUTES

21 U.S.C. § 841(A)(1) ……………………………………….…………………….1

21 U.S.C. § 841(b)(1)(B) ……………………………………………....….4, 25

21 U.S.C. § 841(b)(1)(C) …………………………………………….4, 11, 19

28 U.S.C. § 1291……………………………………………………...……1

Federal Rules of Criminal Procedure Rule 11 …………………… 2, 21, 22, 23, 24

Federal Rules of Evidence Rule 104(b)………………………………...……28

Federal Rules of Evidence Rule 402 ……………………………………..28

Federal Rules of Evidence Rule 403 ……. 2, 5, 6, 27, 28, 32, 33, 34, 36, 38, 39, 41

Federal Rules of Evidence Rule 404(b)…...…...1, 2, 5, 27, 28, 29, 32, 33, 36, 37, 41

JURISDICTIONAL STATEMENT

On March 23, 2012, the United States District Court for the Southern District of New York rendered a judgment after a jury trial convicting Michael James of Conspiracy to Distribute and Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 841(a)(1). The District Court had jurisdiction pursuant to Title 18 of the United States Code.

This is an appeal from the final judgment. On June 26, 2012, a notice of appeal was filed on behalf of Mr. James. The jurisdiction of this Court is pursuant to 28 U.S.C. § 1291, an appeal from a final judgment.

ISSUES PRESENTED

1.  Whether the District Court committed reversible error by refusing to accept Mr. James' guilty plea on January 10, 2012?

2.  Whether the District Court committed reversible error by admitting at trial evidence of a prior bad acts without engaging in the balancing test required by Federal Rules of Evidence ("FRE") Rules 403 and 404(b) and thereafter, failing to provide the jury with sufficient limiting instructions?

3.  Whether the District Court committed reversible error by admitting evidence at trial that Mr. James stored marijuana in the backpack of his twelve year

old daughter, when the limited probative value of the evidence was substantially
outweighed by the risk of unfair prejudice?

## STANDARD OF REVIEW

1) A claim that a district court improperly rejected a defendant's plea is
reviewed for abuse of discretion. *United States v. Culbertson*, 670 F.3d 183, 189
(2d Cir. 2012). *See also United States. v. Smith*, 160 F.3d 117,122 (2d Cir. 1998).
Whatever may have been established by the evidence introduced at Mr. James'
trial and whatever inferences may be drawn from such evidence, the inquiry on
appeal for determining whether the trial judge abused his discretion must focus on
what was before the judge at the time he/she was asked to accept the plea. *See*
Fed. R. Crim. P. 11; *McCarthy v. United States*, 394 U.S. 459, 471 (1969).

2) A claim that evidence of a prior bad act was improperly admitted under
FRE Rules 403 and 404(b) is reviewed for abuse of discretion. However, when a
district court completely fails to either engage in the requisite balancing test
prescribed by these rules or to give a curative limiting instruction thereafter, the
standard of review is *de novo*. *McCarthy v. United States*, 394 U.S. 459, 471
(1969); *United States v. Levy*, 731 F.2d 997 (2d Cir. 1984).

3) A claim that a district court improperly admitted evidence under FRE
Rule 403 is reviewed for abuse of discretion. The reviewing court evaluates

2

whether the district court has conscientiously balanced the proffered evidence's probative value with the risk for prejudice, its conclusion will be disturbed if it is arbitrary or irrational. *United States v. Awadallah*, 436 F.3d 125, 131 (2d Cir. 2006). "To avoid acting arbitrarily, the district court must make a 'conscientious assessment' of whether unfair prejudice substantially outweighs probative value." *United States v. Salameh*, 152 F.3d 88, 110 (2d Cir. 1998) (per curiam) (quoting *United States v. Birney*, 686 F.2d 102, 106 (2d Cir. 1982)).

## STATEMENT OF FACT

Indictment

Mr. James and Vincent Lawrence[1] (also known as "Glennis Hunter" aka "Gigi") were charged with Conspiracy to Distribute or Possession with Intent to Distribute more than 100 kilograms of marijuana.

The indictment in this case charged four overt acts:

a.   On or about August 30, 2004, a co-conspirator not named as a defendant herein, ("CC-1")[2], and several other co-conspirators not charged as

---

[1] Please note that Vincent Lawrence is also referred to by the government as Glennis Hunter, his true name, and as Gigi, his nickname. This brief will refer to the co-defendant, Vincent Lawrence, by the name Vincent Lawrence as this is the name used in the caption of the original indictment. However, throughout the transcript Mr. Lawrence is referred to as all these names interchangeably.

[2] CC-1 is Vincent Lawrence, who was named as a defendant in the original indictment, but not the superseding indictment as he pled guilty on October 26, 2011.

defendants herein, possessed approximately $650,000 in United States currency in the vicinity of East Gun Hill Road, Bronx, New York.

b. On or about December 22, 2005, MICHAEL JAMES, the defendant, possessed approximately five pounds of marijuana in the vicinity of 4422 Edson Avenue, Bronx, New York.

c. On or about December 2, 2010, MICHAEL JAMES, the defendant, possessed approximately five pounds of marijuana in a livery cab in Bronx, New York.

d. On or about December 2, 2010, CC-1 possessed approximately twenty-five pounds of marijuana in the vicinity of Hicks Avenue, Bronx, New York.

(A-48 to A-51).

Plea Agreement and Plea

On January 10, 2012, Mr. James appeared in the District Court with his attorney[3] for the purposes of accepting a plea pursuant to a plea agreement negotiated by his attorney and the government. The plea agreement permitted Mr. James to plead guilty to the lesser included offense of 21 U.S.C. § 841(b)(1)(C) as opposed to the indicted charge of 21 U.S.C. § 841(b)(1)(B), which carries a

---

[3] Initially Mr. James was represented by Alice Fontier, however, after his plea fell through he requested new counsel and was appointed, current counsel, Jane Fisher-Byrialsen.

4

mandatory minimum of 5 years imprisonment. (A-11 to A-17). However, when

Mr. James appeared on January 10, 2012, the District Court refused to accept his

plea. (A-34 to A-47). As a result Mr. James was forced to go to trial.


Motions in Limine

A. Overt Acts

Prior to trial, the defense moved to preclude the government from admitting

evidence of the two alleged overt acts attributed to Mr. James in the indictment, the

December 22, 2005 possession of five pounds of marijuana (hereinafter referred to

as the "December 2005" incident) and the December 2, 2010 possession of five

pounds of marijuana (hereinafter referred to as the "December 2010" incident), as

irrelevant and constituting prior bad acts evidence, under FRE 404(b). (A-59 to A-

63). In response, the government represented to the court that both the December

2005 and the December 2010 incidents constituted overt acts in furtherance of the

conspiracy and, as such, were not governed by the limitations on the admission of

uncharged bad acts contained in FRE Rules 404(b) and 403. (A-64 to A-72). It

was the defendant's position that these were not overt acts and that, based on

defense counsel's review of the discovery materials, there was no evidence to

support the government's position. Additionally, the government argued that the

December 2005 and the December 2010 incidents were relevant evidence of the

existence of a conspiracy and to Mr. James' knowing membership in the conspiracy. *Id.*

At the hearing on the motions in limine, the District Court denied Mr. James' motion to preclude evidence of the December 2005 and December 2010 incidents and admitted the evidence for the limited purpose of showing knowledge and intent, stating: "[] it does tend to show that he had knowledge that the substances were marijuana, and for that I am going to admit that testimony for a limited purpose, as to his knowledge and intent." (A-133, lines 1-22).

B. Backpack

Prior to trial, Mr. James also moved to preclude, as more prejudicial than probative, the fact that his twelve-year-old daughter carried the backpack containing the marijuana that was the subject of the December 2010 arrest. (A-134, lines 7-24). The basis for this request was that the prejudicial effect of this evidence far outweighed its probative value and should be precluded after a FRE 403 balancing test. (A-134 to A-136). The District Court denied this application. (A-136).

Trial

At trial, Mr. James' defense was that he was not part of a conspiracy with Vincent Lawrence. (A-152 to A-158). The government called Vincent

Lawrence/Glenis Hunter, Special Agent Eric Baldus, two chemists, Andre

Davidson, Detectives Mark Moran and Julio Negron of the New York City Police

Department, and Special Agent Michael Zeppieri of the Bureau of Alcohol,

Tobacco, Firearms and Explosives in their case in chief.  At relevance for this

appeal are the testimony of Vincent Lawrence, Baldus, Agent Zeppieri and

Detective Mark Moran.  The defense did not call any witnesses, but relied instead

on the impeachment of Mr. Lawrence and the lack of evidence corroborating Mr.

Lawrence's claims that he engaged in a partnership with Mr. James to deal

marijuana.

     A. Vincent Lawrence

     Mr. Lawrence testified on direct that he had known Mr. James since 1993

(A-164) and that from 2000 to 2010 he and Mr. James engaged in marijuana sales

as partners (A-165, lines 23-25 to A-166, line 1).  Mr. Lawrence's accomplice

testimony was severely impeached by numerous internal inconsistencies and

implausibilities.

     First, Mr. Lawrence's credibility was extremely compromised.  He admitted

that he used numerous aliases, and that some of those aliases, specifically Howard

McCoy and Owen McCoy, to acquire fake green cards.  (A-243 and A-244).  Mr.

Lawrence entered the United States illegally in 1992 using the passport of another

individual.  (A-245).  In 1995, Mr. Lawrence was caught by United States

immigration authorities and deported. (A-247 to A-248). Despite the fact that he knew he was not permitted to re-enter the United States, he came back illegally the very next year. *Id.* Upon entering the United States illegally a second time Mr. Lawrence obtained fraudulent drivers licenses under his new alias. (A-250 to A-251).

Second, Mr. Lawrence testified that when he was arrested in 2004 with approximately $650,000 in drug proceeds, $45,000 of which he claimed belonged to Mr. James. (A-193). However, this testimony is implausible and inconsistent with the testimony of Special Agent Baldus who testified that he investigated Mr. Lawrence for several years, around 2004 and 2005, and never found a single connection between Mr. Lawrence and Mr. James. (A-342 to A-350).

Third, Mr. Lawrence was not a neutral witness; he entered into an agreement with the government in the hopes of receiving a reduction on his sentence and with the promise that he would not be prosecuted for his illegal re-entry if he testified against Mr. James. (A-291 to A-294).

Fourth, there was not a shred of physical evidence produced by the government that would link Mr. James and Mr. Lawrence together. Not a single piece of physical evidence or credible testimony was introduced to show that the two men had been engaged in almost daily drug dealings for ten years as Mr. Lawrence testified, despite both of them being subject to federal investigations.

8

There were no photographs, no phone calls, no text messages, no surveillance, nor any credible witnesses linking them together.

Finally, at his defense counsel argued and the District Court agreed, that the testimony of Vincent Lawrence was uncorroborated and grossly exaggerated. Mr. James's guideline range, according to the PSR and the government was 292 to 365 months based on a criminal history category III and a total offense level of 38. (A-712, lines 16 to 23). The District Court stated that "I have reviewed the testimony that the defendant gave, that Mr. Lawrence gave in connection with the period 2000 to 2003, upon which the government's calculation of 10,000 to 30,000 kilos of marijuana, and the testimony is uncorroborated…there is no showing that there is anything upon which I could find that corroborated it." (A-712, lines 24-25; A-713, lines 1-6). As a result the District Court sentenced Mr. James to 78 months in prison.


Conviction

Ultimately, Mr. James for convicted of Conspiracy to Distribute and Possession with Intent to Distribute100 Kilograms or more of Marijuana. (SPA-1)

ARGUMENT

POINT I

THE DISTRICT COURT COMMITTED REVERSIBLE ERROR
WHEN IT REFUSED TO ACCEPT MR. JAMES' GUILTY PLEA
ON JANUARY 10, 2012.

A. THE PLEA ALLOCUTION WAS MORE THAN SUFFICIENT TO
DETERMINE THAT THERE WAS A FACTUAL BASIS FOR THE PLEA
AND TO MEET ALL THE OTHER RULE 11 REQUIREMENTS

On January 10, 2012 Michael James appeared, with counsel, in the District

Court for a scheduled change of plea hearing pursuant to a signed plea agreement

dated January 9, 2012. (A-110). Mr. James was reminded by the Court that the

plea agreement he had signed had a stipulated guideline range of 57 -71 months.

(A-26, lines 18-23). The arguments to the court by defense counsel and the

government at the January 10, 2012 hearing that an adequate basis for accepting

the plea did exist can be read as objections, in which case the record here is

preserved. (A-41 to A-45).

That guideline range in that plea agreement stipulated a base offense level of

26, for conspiracy to distribute at least 100 kilograms but less than 400 kilograms

of marijuana. A two level reduction for acceptance of responsibility and an

additional one level reduction for timely notice of intent to plead guilty resulted in

an applicable Guidelines offense level of 23. Based on prior convictions, Mr.

10

James agreed that he was in Criminal History Category III, for a sentencing range of 57 -71 months. (A-11 to A-17).

Mr. James was sworn by the District Court, and then questioned as to his present mental status, and current medication. The Court determined that he had received and read the Indictment, and that he had discussed it with his lawyer. The Court further determined that the charges had been explained by counsel to Mr. James, and that he was satisfied with the representation and legal advice he had received. (A-20 to A-22).

Regarding the plea agreement, the District Court determined that Mr. James had read it and signed it, that no other promises were made to him, and that he was not forced by anyone to plead guilty. (A-22 to A-23). The fact that Mr. James faced deportation if convicted of the charges was placed on the record. (A-23). The maximum penalties were made clear to Mr. James. (A-24). Supervised release was explained to him. (A-24 to A-25).

Mr. James was allocuted as to his understanding of the sentencing guidelines and how they applied to him. (A-25 to A-26). His waiver of appeal was also explained. (A-26 to A-27). The preparation and other procedures surrounding the presentence report were explained to Mr. James. (A-27). Mr. James' absolute right to plead not guilty was explained to him. (A-28). His right to a trial by jury and

trial procedure and rights in full detail were also explained by the District Court. (A-28 to A-30). Mr. James acknowledged that he understood that by entering a plea of guilty, if that plea was accepted by the Court, that there would be no trial. (A-30). The charges against Mr. James were then summarized for Mr. James by the Court from the Indictment. (Id.).

Turning to the plea agreement, the District Court explained in detail that the government agreed to accept a plea to 21 U.S.C. § 841 (b)(1)(C), as a lesser included offense of the marijuana conspiracy, for which the statutorily defined drug amount was 50 kilograms and more of marijuana. (A-31). The Court explained the venue requirement. The overt acts set forth in the Indictment were read in full to Mr. James by the Court. (A-31 to A-32). The burden of proof was also explained, and the required elements of proof were explained in detail, including dates and the name of one co – conspirator, Vincent Lawrence. (A-32 to A-33).

To the question, "How do you plead to the charge? Guilty or not guilty?" Mr. James responded, "Guilty, Judge." To the question, "Are you pleading guilty because you are in fact guilty and not for some other reason?" Mr. James responded, "Yeah. I'm guilty, sir." (A-33). Then, at the suggestion of Mr. James' counsel, the Court inquired of Mr. James about the specifics of the offense:

THE COURT: For some time between December 2, two thousand – excuse me – between 2004 and December 2, 2010, Mr. James, did you and Mr. Lawrence agree, together, to violate the narcotics laws of the United States?

THE DEFENDANT: Yes, sir.

THE COURT: And was that agreement an agreement to distribute and possess with intent to distribute 50 kilograms and more of cocaine – of marijuana?

THE DEFENDANT: Yes, sir.

THE COURT: And did you knowingly and intentionally agree with Mr. Lawrence to distribute and possess with intent to distribute and possess with intent to distribute those 50 kilograms and more of marijuana?

THE DEFENDANT: Yes, sir.

THE COURT: What did you do to further the con – the agreement to distribute and possess with intent to distribute marijuana?

THE DEFENDANT: I had five pounds of marijuana in a bag –

THE COURT: I'm sorry?

THE DEFENDANT: I had –

THE COURT: What did you do?

MS. FONTIER: If I may just state it without the accent, Mr. James stated that he had five pounds of marijuana in a bag.

THE COURT: Had you gotten that marijuana from Mr. Lawrence?

THE DEFENDANT: No, no.

THE COURT: Were you going to bring that marijuana to Mr. Lawrence?

THE DEFENDANT: No.

THE COURT: Was that five kilograms of marijuana?

13

MS. FONTIER:     Sorry, your Honor. If I may just clarify the facts: Mr. James had, at the time of his arrest, five pounds of marijuana in a bag that he was carrying.

THE COURT:     I remember that.

MS. FONTIER:     He intended to sell that amount of marijuana. Prior to that occasion, he had sold – possessed and sold marijuana, and had an agreement with others and with Mr. Lawrence regarding the sale of marijuana. That specific five pounds has, to my knowledge, nothing to do with Mr. Lawrence.

THE COURT:     With Mr. Lawrence.

MS. FONTIER:     Correct.

THE COURT:     Well, what did you do to further the conspiracy, or the agreement, with Mr. Lawrence, or other people, to distribute more than  -- how did you reach this agreement to distribute more than 50 kilograms of marijuana?

THE DEFENDANT:     I got the marijuana and I sold it over the years. I had marijuana and I sold it over the years.

THE COURT:     "Over the years." Thank you. During the period 2004 to December the 2nd, 2010?

THE DEFENDANT:     Yes, sir.

THE COURT:     And with whom did you have an agreement to sell the marijuana?

MS. FONTIER:     Sorry, your Honor. I just need a moment.

(Defense counsel and client confer)

THE COURT:     Maybe I should rephrase the question. With whom did you have an agreement to obtain the marijuana?

THE DEFENDANT:     Lawrence, Vincent Lawrence.

THE COURT:     Was he the supplier of over 50 kilograms of marijuana to you during this period of 2002 to 2010?

14

THE DEFENDANT:        No. No, sir.

MR. NAWADAY:        Your Honor, Mr. James accepts that there were over 50 kilograms involved in the entirety of the conspiracy between 2004 and 2010. He denies having gotten that amount from Mr. Lawrence specifically.

THE COURT:        You also got it from other persons?

THE DEFENDANT:        Yes, sir.

THE COURT:        And did the person who supplied you with the marijuana know that you were going to sell it?

THE DEFENDANT:        Yes, sir.

THE COURT:        How would they know that it wasn't going to be used by you for your own personal use?

THE DEFENDANT:        I don't – I don't know, sir.

THE COURT:        What?

THE DEFENDANT:        I don't know.

MS. FONTIER:        Your Honor, I think it's probably self – evident that when an amount of five kilograms or more is given to a single individual, it's not for that person's individual use. Mr. James is saying he did not know how other people knew what they knew.

THE COURT:        Then I'll ask it another way. What were the quantities that these people supplied to you?

THE DEFENDANT:        I got five kilogram at a time.

THE COURT:        How much?

THE DEFENDANT:        Five kilogram at a time. Five.

THE COURT:        "Five kilograms at a time"?

THE DEFENDANT:        Yes.

15

THE COURT: You always bought at least five kilograms at a time?

THE DEFENDANT: Not really.

THE COURT: What?

THE DEFENDANT: Not really. I take full – I take full responsibility for the 50 kilograms. I don't know how to answer that question.

THE COURT: I don't follow that.

MS. FONTIER: Your Honor, Mr. James is having difficulty with this because this is not – he didn't have, like every two weeks, he would buy five pounds or five kilograms. This was not a set business transaction that happened repeatedly. But he has stated that he, on multiple occasions, had more than five kilograms he obtained, and then he would sell that in smaller quantities to various people.

THE COURT: I'm not worried about the purchasers' using it for personal use. I want to know that there was a conspiracy to distribute and possess with intent to distribute between people. It can't be that he just purchased small amounts from various people over the years for his personal  -- that could easily be for his personal use. It's got to be an agreement to distribute, and that they know that he's planning to distribute it, in order for there to be a conspiracy to distribute. Either he has – either he had – either people knew what he was doing or they participated in some way to get knowledge.

MS. FONTIER: Your Honor, can I just have five or ten minutes in the back room to discuss this?

THE COURT: Sure.

(Recess)

MS. FONTIER: Thank you for the break, your Honor. We're ready to proceed.

THE COURT: So you have prepared an allocation? (sic). Are there questions I should ask? I don't know what questions to ask at this point.

16

THE DEFENDANT:     Sir, every other week, I get the weed from Vincent Lawrence.

THE COURT:     I'm sorry?

THE DEFENDANT:     Every other week, I get weed from Vincent Lawrence for sale.

MS. FONTIER:     He said, "Every other week, I get weed from Vincent Lawrence to sell."

THE COURT:     I see. And how much in total did you get from Mr. Lawrence?

THE DEFENDANT:     I don't know, but I think it may be between four and ten.

THE COURT:     Ten kilograms? Ten pounds, ten kilograms?

THE DEFENDANT:     Ten pounds.

THE CLERK:     Ten pounds, he said.

THE COURT:     Ten pounds. How much did you get every other week?

        (Defense counsel and client confer)

THE DEFENDANT:     I don't – I don't know what – I don't know what to say.

THE COURT:     I understand.

MS. FONTIER:     Your Honor, this is unfortunately not going very well.

But I believe over the course of this allocution, Mr. James has stated that he agreed that, over the years, it was more than 50 kilograms, that he obtained marijuana from Vincent Lawrence on almost a biweekly basis. He doesn't know the exact amount of each occurrence. But it was for sale. Over the course of scattered statements, he has certainly made those facts –

THE COURT:     I can't accept it. This isn't clear enough to me.

17

MS. MASELLA:   May we have one moment, your Honor?

THE COURT:      Yes.

I haven't got anything serious from the defendant. I hear from you all. But I haven't got anything clear from the defendant here. And I think – should we adjourn this matter or you – it's not clear to me that there's a conspiracy to distribute, not for self-use but for distribution, between two or more persons for 50 kilograms of marijuana, to distribute it to other people.

MS. MASELLA:   We understand the Court's concern. I think a few questions could clarify this. Let me just have one moment to speak with Ms. Fontier.

(Government and defense counsel confer)

(Defense counsel and client confer)

MS. FONTIER:    Unfortunately, your Honor, is it possible to perhaps just adjourn this matter so that I can have a lengthier meeting with Mr. James and prepare a proper allocution for your Honor?

(A-35 to A-42).

At this point in the proceedings, a discussion between the Court, defense counsel, and the government follows, in which counsel for both sides seek to explain to the court that there is in fact a sufficient basis to accept the plea. (A-42 to A-45). The District Court rejected counsels' arguments that the allocution and additional information was sufficient, stating:

THE COURT:      He hasn't admitted to those things. That's the point. He hasn't. He hasn't. You said it. He hasn't.

THE DEFENDANT:      Sir, I want – I want ---

THE COURT:     I'm not going to waste my time here on this. You go back some other time, when you're ready to take an allocution. I'm not going to take it on this basis. You've said these things. Ms. Masella has said them. Mr. Nawaday said them. But the defendant hasn't said them.

MS. FONTIER:     Your Honor, can I ask Mr. James specific questions and if he answers them to your Honor's satisfaction –

THE COURT:     Yes, you can. You can.

THE DEFENDANT:     Sir, I want a different attorney.

THE COURT:     I'm sorry?

THE DEFENDANT:     I want a different attorney.

MS. FONTIER:     He says he wants a new lawyer, your Honor.

THE COURT:     I think you want to think that over before you make a statement here, because I have been giving the lawyers trouble. I want to be sure that you are guilty of the crime of which these lawyers think that you are guilty. And  I have to hear it from your own mouth. I think you want to think it over, Mr. James, before you make that decision.

THE DEFANDANT:     Yes. Yes, sir.

THE COURT:     All right. I can see why you might have gotten concerned, because I raised my voice a little bit.

THE DEFENDANT:     Yes, sir.

THE COURT:     All right. We'll have to adjourn the matter.

(A-45 to A-46).

1. <u>On the First Day of Trial the District Court Implicitly Acknowledged that Mr. James' January 10th Plea was Acceptable</u>

On March 20, 2012, just before the trial began the next day, at the urging of the Court, the government offered a revised plea agreement to Mr. James, with a mandatory minimum of 5 years and a higher guideline calculation than the first plea agreement. The District Court stated that "whatever plea agreement was offered should still be offered to defendant before we commence this trial, so that he gets the advantage of the three points if he wants it. I think in all fairness that should be done, and if the government doesn't agree, I'm going to do it … I think that he didn't have the opportunity to plead guilty in time." (A-75).

Not until a supervisor from the U.S. Attorney's Office came to the courtroom on March 20 did the government relent on its stated position that the January 10, 2012 signed offer of a plea to a 21 U.S.C. § 841(b)(1)(C), with no mandatory minimum, was off the table. The Court told the supervisor, Todd Blanche, "So I think he really ought to be able to get the benefit of pleading early. I did not realize that it was to less than a five-year mandatory minimum, but they had it both ways. And I think the defendant is willing to plead guilty to the lesser charge that he was offered. And as a matter of equity, in these circumstances, I thought that the government ought to reextend that offer, if he wants to plead guilty

to that offer that was previously given, and not have to suffer the mandatory

minimum." (A-100).

The Court then suggests to the supervisor, regarding the January 10, 2012 hearing

> [W]hat happened is, Mr. James got his back up, he got his back up with his prior counsel, and thought his prior counsel didn't really want to go to trial and he wasn't really going to work for him on that, and it showed, and he changed his mind in the course of this thing. I think it was a little bit of stubbornness on his part, but people make mistakes, and this is – I don't mean a big mistake, like the one he did in selling marijuana, I mean they make mistakes in the course of pleading –" (A-107). The Court went on to state that, "in my opinion, she (defense counsel at January 10 hearing) hadn't prepared Mr. James for his plea allocution in federal court, which is considerably different than it is in state court … and I thought that that contributed to the error, the mistake by Mr. James.

(A-109). Ultimately, Mr. James did not take the revised plea agreement, without a mandatory minimum but with increased guidelines from the first plea agreement he signed and points for obstruction of justice. Instead, Mr. James proceeded to trial, and was convicted by the jury.

2. At Sentencing, the District Court Again Stated that Mr. James was not Properly Prepared for the Plea

On June 25, 2012, at sentence, the District Court stated, "But it appeared to me that he had not been sufficiently prepared for sentencing by his then counsel, and that he would have articulated that he would have been able to respond to the questions of the Court if he had been properly prepared." (A-714, lines 23-25 to A-715, lines 1-3).

Ultimately, Mr. James was sentenced to 78 months of imprisonment, a significantly higher sentence than he faced under even the high end of the stipulated range in the January 10 plea agreement, 57 – 71 months. (SPA-1 and A-716, lines 18-20). Additionally, Mr. James lost his ability to receive acceptance points off of his sentencing guidelines calculation.

## B. APPLICABLE RULE AND LAW

Federal Rule of Criminal Procedure 11(b) which governs Considering and Accepting a Guilty or Nolo Contendre Plea, states:

(1) Advising and Questioning the Defendant.
Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:
(A) the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath;
(B) the right to plead not guilty, or having already so pleaded, to persist in that plea;
(C) the right to a jury trial;
(D) the right to be represented by counsel – and if necessary have the court appoint counsel – at trial and at every other stage of the proceeding;
(E) the right at trial to confront and cross – examine adverse witnesses, to be protected from compelled self incrimination, to testify and present evidence, and to compel the attendance of witnesses;
(F) the defendant's waiver of these trial rights if the court accepts a plea of guilty or nolo contendere;
(G) the nature of each charge to which the defendant is pleading;
(H) any maximum possible penalty, including imprisonment, fine and term of supervised release;
(I) any mandatory minimum penalty;

22

(J) any applicable forfeiture;

(K) the court's authority to order restitution;

(L) the court's obligation to impose a special assessment;

(M)   in determining a sentence, the court's obligation to calculate the applicable sentencing – guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a); and

(N) the terms of any plea – agreement provision waiving the right to appeal or to collaterally attack the sentence.

(2) Ensuring That a Plea is Voluntary. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement).

(3) Determining the Factual Basis for a Plea. Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea.

Rule 11 (f) requires the court to assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty. *United States v. Maher*, 108 F.3d 1513, 1524 (2d Cir. 1997).   The *Maher* court continued:

In making its factual – basis determination, the court is not required to rely solely on the defendant's own admissions.  The Rule does not specify that any particular type of inquiry be made.

*Maher*, at 1524.  An inquiry might be made of the defendant, of the attorneys for the government and the defense, of the presentence report when one is available, or by whatever means is appropriate in a specific case.  A district court "may rely on [the] defendant's own admissions, information from the government, or other

information appropriate to the specific case" to ensure that a factual basis exists for a plea of guilty before accepting it. *United States v. McFadden*, 238 F.3d 198, 200 (2d Cir. 2001) (citing *United States v. Andrades,* 169 F.3d 131, 136 (2d Cir. 1999)).  Fed. R. Crim P. 11 Advisory Committee Note (1974) (Rule 11 (f)) (emphasis omitted).

Thus, so long as the facts relied on are placed on the record at the time of the plea, "the district court, in determining whether there was a factual basis for the plea, [i]s free to rely on any facts at its disposal – not just the admissions of the defendant." *Irizarry v. United States*, 508 F.2d 960, 967 (2d Cir. 1975) (quoting *Maher*, at 1524-1525).   For example, if "the charge is uncomplicated, the indictment detailed and specific, and the [defendant's] admission unequivocal," then the reading of the indictment and the admission of the facts described in it satisfies Rule 11 (f). *United States v. Smith,* 160 F.3d 117,121 (2d Cir. 1998).

A court need not follow a particular formula in ensuring the defendant understands the charges against him … if defendant's recitation of his own conduct insufficiently supports the relevant charge, then Rule 11 (c)(1) nonetheless is satisfied where the charging instrument plainly describes the offense and defendant acknowledges that he read, understood, and discussed with his attorney the legal

document. *United States v. Blackwell*, 199 F.3d 623, 626 (2d Cir. 1999) (citing *United States v. Andrades*, 169 F.3d 131,135 (2d Cir. 1999)).

A sufficient factual basis may be established by reading the charge to a defendant and eliciting the defendant's admission that he committed the conduct alleged if "the charge is uncomplicated, … detailed and specific, and the admission unequivocal." *United States v. O'Hara*, 960 F.2d 11, 13 (2d Cir. 1992).

## C. DISCUSSION

Mr. James' intent to plead guilty was unquestionably clear from the record on January 10, 2012. He clearly stated that he was guilty, that he agreed to violate the laws with Mr. Lawrence and others between 2004 and 2010, with the intent to possess and distribute 50 kilograms and more of marijuana.

Mr. James answered many of the Court's posed questions twice, without waivering, for example, that he agreed with Mr. Lawrence to obtain marijuana. Mr. James stated that he got five kilograms at a time, over the years, and that he took "full responsibility for the 50 kilograms." (A-37). Mr. James stated further, "every other week, I get weed from Vincent Lawrence for sale." *Id.* Defense counsel on several occasions explained and amplified Mr. James' answers to the Court, as did government counsel. Thus, a solid factual basis existed to accept the plea.

Whatever confusion did exist about the quality of his allocution appeared to stem from language difficulty and Mr. James' difficulty in understanding the Court's questions.  Three times, confused by the Court's questions, Mr. James stated, "I don't  --- I don't know sir," and "I don't know how to answer that question" and "I don't – I don't know what – I don't know what to say."  (A-36, line 25; A-37, lines 19-21; and A-40, lines 22-23).

The District Court erred in not accepting the plea.  The Court implicitly acknowledged that plain error by its statements just preceding the trial, on March 20, 2012, when it said, "he ought to get the benefit of pleading early … I think the defendant is willing to plead guilty to the lesser charge that he was offered."  (A-99, lines 23-25 to A-100 lines 1-2).  The District Court also later raised, on two separate occasions, the possibility that but for what the District Court described as the inadequate preparation of Mr. James by his first defense counsel, Mr. James would have sufficiently allocated to his guilt. (A-109, and A-714 - A-715).

Mr. James' substantial rights were affected by this plain error, in that by not accepting his plea of guilty and the attendant plea agreement, he did not get the 3 points reduction in his guideline range for accepting responsibility and making a timely guilty plea. Mr. James was also denied the opportunity to plead to the charge with no mandatory minimum that was in the plea agreement.  Instead, Mr.

26

James was forced to go trial for the same charge he had attempted to plead guilty
to earlier. He was sentenced under 21 U.S.C. § 841(b)(1)(B), with a 5 year
mandatory minimum, and without any credit for accepting responsibility. Mr.
James should be resentenced as if his plea and plea agreement had been accepted
by the District Court on January 10, 2012.

POINT II

THE DISTRICT COURT'S ADMISSION OF PRIOR BAD ACTS
WITHOUT ENGAGING IN THE BALANCING TESTS
REQUIRED BY FRE RULES 403 AND 404(b) AND WITHOUT
PROVIDING A LIMITING INSTRUCTION WAS REVERSIBLE
ERROR.

First, at the trial of Mr. James, the District Court admitted evidence of Mr.
James' prior possession of five pound of marijuana in the Bronx on December 22,
2005 and his possession of five pounds of marijuana in the Bronx on December 2,
2010, over defense objections.  Second, the District Court admitted the testimony
of Andre Davidson, specifically that Mr. Davidson had committed a violent, armed
robbery and sold the drug proceeds of that robbery to Mr. James, over defense
objections.  In each occasion the District Court neglected to engage in the
applicable balancing tests under FRE Rules 404(b) and 403.

THE DISTRICT COURT COMMITTED REVERISBLE ERROR WHEN IT ADMITTED EVIDENCE OF THE DECEMBER 2005 INCIDENT AND THE DECEMBER 2010 INCIDENT WITHOUT ENGAGING IN THE BALANCING TESTS REQUIRED BY FRE RULES 403 AND 404(b) AND WITHOUT PROVIDING A LIMITING INSTRUCTION WAS REVERSIBLE ERROR.

A. APPLICABLE LAW

The District Court committed reversible error by admitting evidence of the December 2005 and the December 2010 incidents without engaging in the requisite balancing test required by FRE Rules 404(b) and 403 and without thereafter providing a curative limiting instruction to the jury.

Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. In may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In *Huddleston v. United States*, 485 U.S. 681 (1988), the Court set forth a four prong test for admission of prior bad acts evidence under Rule 404(b): (1) the evidence must be introduced for a proper purpose, such as proof of identity or intent; (2) the offered evidence must relevant to an issue in the case under Rule 402

28

and Rule 104(b); (3) the evidence must satisfy the probative-prejudice balancing test of Rule 403; and (4) if the prior bad acts evidence is admitted, the court must provide a limiting instruction to the jury.  *Id.* at 691-92.  In this case the District Court erred in that it neglected to properly follow prongs one, three and four of the test set forth in *Huddleston*.


B. DISCUSSION

Prong One

    Initially, Mr. James moved the District Court to preclude the government from introducing at trial any prior bad acts evidence.  (A-53 to A-54).  The government responded that it had no present intention of introducing any evidence pursuant to FRE Rule 404(b).  (A-55 to A56).  Subsequently, Mr. James moved to preclude any testimony or evidence of the alleged overt acts, the December 2005 and December 2010 incidents.  Mr. James argued that the two incidents were not overt acts, but simply prior bad acts pursuant to FRE Rule 404(b).  (A-59 to A-63). In response, the government argued that the evidence was relevant to the existence of a conspiracy and to Mr. James' knowing membership in the conspiracy. Significantly, the government made absolutely no mention of the FRE Rule 404(b) analysis.  (A-64 to A-71).

Before the trial commenced, the District Court denied Mr. James' motion and advised the parties that he would admit the evidence of the December 2005 incident and the December 2010 incident for the limited purpose of showing knowledge and intent, stating: "[] it does tend to show that he had knowledge that the substances were marijuana, and for that I am going to admit that testimony for a limited purpose, as to his knowledge and intent." (A-133, lines 13-16).

In *United States v. Garcia*, 291 F.3d 127 (2d Cir. 2002), the Court held that "if the government cannot identify a similarity or some connection between the prior and current acts then evidence of the prior act is not relevant to show knowledge or intent." In this case, the government's decision to carte blanche offer the December 2005 and December 2010 incidents as overt acts does not make them such. The government even admitted during oral argument of Mr. James' motion to preclude that the December 2010 incident had no connection to the alleged co-conspirator Mr. Lawrence. (A-95, lines 8-21). Despite the government's admission that the December 2010 marijuana did not come from Mr. Lawrence and was not going to Mr. Lawrence, they argued that it tends to show they had an arrangement. (A-94 to A-99). This argument bears absolutely no merit.

The record in this case confirms Mr. James' position that the December 2005 and December 2010 incidents bear no connection whatsoever to the alleged

conspiracy.  Each of these incidents was isolated, occurred independently and neither involved Mr. Lawrence.  Despite the government's pre-trial presentation, no evidence was proffered nor admitted by any of the government's witnesses that the December 2005 or December 2010 incidents showed the existence of a conspiracy between Mr. James and Mr. Lawrence or Mr. James' knowing membership in the alleged conspiracy.  In fact, no evidence whatsoever was presented that Mr. Lawrence had knowledge of either incident or that he was connected to either incident.

Special Agent Eric Baldus of the Drug Enforcement Administration confirmed Mr. James' position when he testified that (1) he had investigated Mr. Lawrence for several years but never found a connection between him and Mr. James, (2) he arrested Mr. Lawrence in possession of $670,000 in 2004 and found no connection to or mention of Mr. James in that investigation, and (3) he conducted unrelated surveillance of Mr. James and arrested him for the December 2005 incident and found no connection whatsoever to Mr. Lawrence.  (A-341, lines 8 to A-348).  Moreover, Agent Baldus, who investigated narcotics trafficking and sales in the Bronx for many years, testified that he never spoke to anybody who linked Mr. James and Mr. Lawrence together.  (A-349, line 25 to A-350, lines 1-7).

In fact, the evidence of the two incidents offered at trial was nothing more than propensity evidence and should have been precluded pursuant to FRE Rule

404(b) because the government did not identify any connection between the charged conspiracy and the prior acts. The evidence at trial did not establish any connection whatsoever between the December 2005 incident and the charged conspiracy with Mr. Lawrence. There was no argument by the government or evidence that the marijuana Mr. James was arrested with in 2005 was from a supplier that Mr. James and Mr. Lawrence shared, that it was kept in a stash house shared by Mr. James and Mr. Lawrence, that the marijuana was packed similarly to marijuana taken from Mr. Lawrence in the past, or that the marijuana was intended to be split with Mr. Lawrence.

Likewise, the government did not offer any connection or similarity between the December 2010 marijuana and charged conspiracy. The only link at all between the December 2010 incident and Mr. Lawrence is the testimony of Agent Zeppieri wherein he alleges that after Mr. James' arrest he made an unrecorded statement that he knew someone named Gigi who had a large amount of marijuana and that he had shared customers with him. (A-457 and A-535) However, there is no evidence that the December 2010 marijuana came from a shared supplier, was being sold to a customer referred by Mr. Lawrence, came from Mr. Lawrence, was going be split with Mr. Lawrence, was going to be stored at a stash house shared with Mr. Lawrence or was in any way connected to Mr. Lawrence.

32

Although the District Court held that the evidence was to be admitted for the purpose of showing "knowledge that the substances were marijuana, and for that I am going to admit that testimony for a limited purpose, as to his knowledge and intent," (A-133, lines 13-16) as opposed to the government's contention that it was relevant to show existence of the conspiracy and knowing membership thereof, the District Court's ruling was in error, as the evidence did not do that. The evidence did not show knowledge and intent by Mr. James.

<u>Prong Three</u>

The District Court did not engage in the requisite balancing tests as prescribed by Fed. R. Evid. Rule 404(b) and Rule 403 when it denied Mr. James' motion to preclude and thereafter, admitted evidence of the December 2005 incident and the December 2010 at trial.

A District Court's decision to admit evidence of a prior bad act will ordinarily be reviewed for abuse of discretion and reversed on appeal only where the district court acted "arbitrarily and irrationally." *United States v. Brand*, 467 F.3d 179 (2d Cir. 2006). However, an exception to this standard of review comes into play where the District Court mistakenly concludes that a prior bad act is a substantive act in furtherance of the conspiracy and fails to engage in the balancing

33

test required by FRE Rules 404(b) and 403, or fails to give the jury a limiting instruction. *United States v. Rodriguez*, 943 F.2d 215, 218 (2d Cir. 1991).

This Court has expressly instructed District Courts to engage in a balancing test where there is any question as to whether the incident in question is an act in furtherance of the conspiracy or a prior bad act as referred to in FRE Rule 404(b). *United States v. Levy*, 731 F.2d 997 (2d Cir. 1984). Notably, a court's failure to balance the probative value of the evidence against the prejudicial impact of its admission is itself reversible error. *United States v. Quattrone*, 441 F.3d 153, 185, fn. 32 (2d Cir. 2006). *See, e.g., United States v. Gilan*, 967 F.2d 776, 783 (2d Cir. 1992) (the admission of evidence of uncharged crimes and "the absence of a proper Rule 403 balancing test resulted in reversal); *United States v. Peterson*, 808 F.2d 969, 967 (2d Cir. 1987) (reversing conviction where record did not reflect any balancing by the court as envisioned by FRE Rules 404(b) and 403); *United States v. Figueroa*, 618 F.2d 934, 942-44 (2d Cir. 1980).

As discussed above, the December 2005 and December 2010 incidents were not overt acts of the conspiracy, but instead were merely prior bad acts that should have been subject to a FRE Rule 403 analysis. However, even assuming *arguendo*, that the incidents are overt acts, the question was raised and thereby triggered the requirement that the District Court perform a balancing test pursuant

to F.R.E. Rule 403.  The District Court in this case did not engage in any Rule 403 analysis, therefore, requiring reversal.

## Prong Four

As the Court directed in *Huddleston*, if the prior bad acts evidence is admitted, the court must provide a limiting instruction to the jury.  485 U.S. 681 (1988).  Although the District Court indicated before trial that the disputed evidence would only be admitted to show knowledge and intent (A-133, lines 2-22) and despite Mr. James request that a limiting instruction be given (A-509, lines 7-13), no such instruction was given.  The District Court's failure to provide a limiting instruction to the jury left Mr. James without any curative remedy, because the jury was tainted with prejudicial evidence without any instruction on its limited purpose.

## Not Harmless Error

The government's reliance on the improperly admitted prior bad acts evidence in its summation undermines any claim of harmless error.  *United States v. Gordon*, 987 F.2d 902 (2d Cir. 1993); *United States v. Rodriguez*, 943 F.2d 215 (2d Cir. 1991).  Additionally, the district court's failure to instruct the jury that

proof of these prior bad acts could only be used for a limited purpose exacerbated the likelihood that the jury would make improper use of the evidence.

THE DISTRICT COURT COMMITTED REVERSIBLE ERROR
WHEN IT ADMITTED THE TESTIMONY OF ANDRE
DAVIDSON REGARDING PRIOR BAD ACTS WITHOUT
ENGAGING IN THE BALANCING TESTS REQUIRED BY FRE
RULES 403 AND 404(b).

As discussed, *supra*, it is reversible error for the court to admit evidence of prior bad acts without engaging in the requisite balancing test required by FRE Rules 404(b) and 403.  In this case, the District Court failed to properly follow prongs one and three of the *Huddleston* test when it admitted the testimony of Andre Davidson (hereinafter "Davidson").  The testimony of Davidson should have been precluded under prong one because it was not connected or similar to the acts charged in the indictment and under prong three because it was substantially more prejudicial than probative.

Prong One

As described, *supra*, the analysis in *Garcia*, 291 F.3d 127, requires that the government identify a similarity or some connection between the prior and current acts to show that it is relevant or to prove knowledge or intent.  In this case, Davidson's testimony should have been precluded, because his testimony about his

uncharged 2005 robbery of a drug dealer and sale of marijuana to Mr. James (hereinafter, "2005 robbery") was not similar or connected to the December 2005 incident charged in the indictment or the December 2010 incident charged in the indictment.

The 2005 robbery described by Davidson was a single incident that was unrelated and distinct from either of the acts charged in the indictment. In fact, Davidson confirmed that he does not know anyone by the name of Vincent Lawrence or Glennis Hunter. (A-405, lines 3-8). Davidson's testimony was void of any details that connected the 2005 robbery to the acts charged in the indictment, the alleged conspiracy between Mr. James and Vincent Lawrence. (A-364 to A-406). Because the government did not link the 2005 robbery to the incidents charged in the indictment, Davidson's testimony is not relevant and fails prong one of the test in *Huddleston* and should have been excluded. It should therefore be found that admission of such testimony requires reversal.

Prong Three

The testimony of Andre Davidson should have been excluded because it was substantially more prejudicial than probative. When the District Court admitted the testimony of Andre Davidson, the jury was advised that it was admitted "as it may show that, as you may find it may show, that the defendant had knowledge of

marijuana insofar as it may show that he deals in marijuana, not insofar as it may show that he is a member of the conspiracy that the defendant is charged with by the government." (A-404, lines 17-22). In providing this instruction the judge limited the testimony to be considered only in regards to knowledge and intent, which generally is proper. FRE Rule 404(b). However, the admission of Davidson's testimony was an abuse of discretion due to the inflammatory nature of Davidson's testimony wherein he described events significantly more sensational and disturbing than the acts charged in the indictment. *Cf. Roldan-Zapata,* 916 F.2d 795, 804 (2d Cir. 1990) (holding that the District Court did not abuse its discretion when it admitted a prior bad act that was not any more sensational or disturbing than the crimes charged in the indictment).

In Davidson's testimony he recounts the events of a 2005 robbery with details that are certainly more "sensational" and "disturbing" than the acts charged in the indictment. He testified that "we ran inside the house with our guns out and we stuck up the house up…the individual that we actually went there to rob, we picked them up, smacked them around with a gun a little bit, then they end up giving us the money and the weed and stuff;" (A-370, lines 17-23). Davidson also testifies that the guns were loaded (A371, lines 6-7), that there were elderly people in the apartment they robbed (A-371, lines 12-15), and that approximately $12,000 in cash was also stolen during the robbery (A-372, lines 22-24 and A-373, lines 2-

38

3). Davidson's testimony then links Mr. James to this violent robbery, because he testifies that he sold the stolen marijuana from the robbery to Mr. James. (A-379, lines 5-16).

Conversely, the December 2005 incident and the December 2010 incident, which are charged as overt acts in the indictment, did not elicit any testimony that could be characterized as violent. Each of the arrests charged in the indictment were merely possession of marijuana charges that did not include any allegations of violent crimes like the robbery described in Davidson's testimony. The District Court certainly abused its discretion when it admitted Davidson's testimony that linked Mr. James to a violent robbery that included extremely explicit and brutal details. The severely prejudicial nature of Davidson's testimony certainly would outweigh the alleged probative value, to prove that the defendant had knowledge of marijuana insofar as it may show that he deals in marijuana. Based on the foregoing, it should be found that it was an abuse of discretion and reversible error when the District Court admitted the testimony of Andre Davidson that should have been precluded under the FRE Rule 403 balancing test because it was more prejudicial than probative.

POINT III

THE DISTRICT COURT COMMITTED REVERSIBLE ERROR
WHEN IT ADMITTED EVIDENCE THAT MR. JAMES STORED
MARIJUANA IN THE A BACKPACK CARRIED BY HIS
TWELVE-YEAR-OLD DAUGHTER.

The District Court erred when it admitted evidence that the five pounds of marijuana Mr. James was charged with possessing on December 2, 2010 was stored in the backpack carried by his twelve-year-old daughter. As discussed *supra*, FRE Rule 403 requires that evidence should be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. The Supreme Court has explained that evidence must be excluded where its relevance is "substantially outweighed" by its prejudicial effect, that is, by its tendency to encourage the jury to decide the case on improper grounds. *See* Fed. R. Evid. 403 and advisory committee note; *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Whether the government has alternative means of effectively proving the same thing without the prejudicial evidence is also pertinent. *See Old Chief*, 519 U.S. at 184.

In this case, the District Court's only rationale for denying defendant's motion to exclude this extremely prejudicial fact was because "there is no showing that the daughter knew what was going on, no showing that she was charged or she knew what was going on" and that the court "[did not] see why it is prejudicial". (A-136, lines 7-9; A-135, line 24). This statement about the daughter does not

40

comport with the District Court's subsequent statement that such information "is very probative of the conspiracy…It's probative of his knowledge and his intent," (A-136, lines 15-16) because the age of Mr. James' daughter does not in any way demonstrate Mr. James' knowledge or intent. Conversely, the reasoning expressed by the District Court provides the explanation why the fact that Mr. James' twelve-year-old daughter carried the backpack containing marijuana is not relevant to the crime charged against Mr. James.

Detective Moran, who testified about the December 2010 incident, could have portrayed all the necessary details of the December 2010 arrest without revealing the young age of Mr. James' daughter. The substance of the testimony of Detective Moran would have been exactly the same if he had referred to Mr. James' daughter as a female carrying a backpack instead of using extremely prejudicial language wherein he repeatedly described her as a "little girl". *See, e.g.,* A-469, line 2; A-469 line 4; A-470, line 18; A-471, line 10; A-474, line 5. The only purpose served by referring to Mr. James' daughter as a "little girl" would have been to inflame the jurors and distract from what was truly at issue: whether Mr. James was involved in the conspiracy to distribute marijuana as charged in the superseding indictment. The age of Mr. James' daughter and her presence at the scene of the December 2010 arrest was not relevant or pertinent to the allegations charged in the superseding indictment and therefore should have

41

been precluded.  The District Court's decision to admit such details therefore requires reversal.

CONCLUSION

The trial court committed reversible error by improperly rejecting Mr. James' plea, by admitting evidence of the December 2005 incident, the December 2010 incident and the 2005 robbery without engaging in the balancing test prescribed by FRE Rules 404(b) and 403 or providing the jury with a limiting instruction.  This Court should reverse Mr. James' conviction and order a new trial.


Dated: October 8, 2012


/s/ Jane Fisher-Byrialsen, Esq.
FISHER, BYRIALSEN & KREIZER PLLC
Attorneys for Defendant-Appellant
291 Broadway, Suite 709
New York, New York 10007
(212) 962-0848

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate

Procedure, the foregoing brief is in 14-Point Times Roman proportional font

and contains 9533 words and thus is in compliance with the type-volume

limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate

Procedure.


Dated: New York, New York
      October 8, 2012


                /s/ Jane Fisher-Byrialsen, Esq.
                Fisher, Byrialsen & Kreizer PLLC
                Attorneys for Defendant-Appellant
                291 Broadway, Suite 709
                New York, New York 10007
                (212) 962-0848

**SPECIAL APPENDIX**

i

**SPECIAL APPENDIX**
**TABLE OF CONTENTS**

**Page**

Judgment, dated June 25, 2012, Appealed From ....... SPA-1

SPA-1

⊾AO 245B    (Rev. 06/05) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

| SOUTHERN | District of | NEW YORK |
|---|---|---|

| UNITED STATES OF AMERICA | JUDGMENT IN A CRIMINAL CASE |
|---|---|
| V. | |
| MICHAEL JAMES | |

|  | |
|---|---|
| Case Number: | S1  1:10CR01293-01(RPP) |
| USM Number: | 64500-054 |
| JANE FISHER-BYRIALSEN, ESQ. | |
| Defendant's Attorney | |

**THE DEFENDANT:**

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

X was found guilty on count(s)  ONE.
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense | Count |
|---|---|---|---|
| T21 USC 846 | CONSPIRACY TO DISTRIBUTE AND POSSESS WITH INTENT TO DISTRIBUTE MARIJUANA | 1/6/11 | 1 |

    The defendant is sentenced as provided in pages 2 through ____6____ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

| ☐ Count(s) | _____ | ☐ is | ☐ are | dismissed on the motion of the United States. |
|---|---|---|---|---|
| X Underlying | Indictment, 10cr129(RPP) | X is | ☐ are | dismissed on the motion of the United States. |
| ☐ Motion(s) | _____ | ☐ is | ☐ are | denied as moot. |

    It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

JUNE 25, 2012
Date of Imposition of Judgment

_Signature of Judge_

HONORABLE ROBERT P. PATTERSON, JR.
Name and Title of Judge

6/28/12
Date

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/28/12

AO 245B    (Rev. 06/05) Judgment in Criminal Case
Sheet 2 — Imprisonment

| | Judgment — Page   2   of   6 |

**DEFENDANT:**    MICHAEL JAMES
**CASE NUMBER:**    S1 1:10CR01293-01(RPP)

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:    **SEVENTY EIGHT MONTHS.**

X    **The court makes the following recommendations to the Bureau of Prisons:**

     -The defendant is to be housed at a BOP facility as close to New York City as possible.
     -The defendant receive the BOP's 500 hour RDAP substance abuse treatment program for marijuana.
     -The defendant is to receive educational assistance toward receiving his GED.
     -The defendant is to receive vocational/job training as a restaurant or hotel chef.
     -The defendant is to receive cognitive behavior training.

X    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

     ☐   at  _____   ☐ a.m.   ☐ p.m.   on  _____ .

     ☐   as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

     ☐   before 2 p.m. on  _____ .

     ☐   as notified by the United States Marshal.

     ☐   as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on  _____   to  _____

a_____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By  _____
DEPUTY UNITED STATES MARSHAL

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
           Sheet 3 — Supervised Release

| | | |
|---|---|---|
| | | Judgment—Page __3__ of __6__ |

**DEFENDANT:**    MICHAEL JAMES
**CASE NUMBER:**   S1 1:10CR01293-01(RPP)

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :     FOUR YEARS.

    The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐    The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

X    The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if

X    The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or student, as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

    If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

    The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)    the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)    the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)    the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)    the defendant shall support his or her dependents and meet other family responsibilities;

5)    the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)    the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)    the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)    the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)    the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)    the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)    the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)    the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)    as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

SPA-4

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
           Sheet 3C — Supervised Release

Judgment—Page   4   of   6  

DEFENDANT:     MICHAEL JAMES
CASE NUMBER:   S1 1:10CR01293-01(RPP)

## SPECIAL CONDITIONS OF SUPERVISION

The following mandatory conditions are imposed:
-The defendant shall not commit another federal, state, or local crime.

-The defendant shall not illegally possess a controlled substance.

-The defendant shall not possess a firearm or destructive device.

-The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit toone drug testing within fifteen(15) days of placement on supervised release and at least two unscheduled drug tests thereafter, as directed by the probation officer.

-The defendant shall cooperate in the collection of DNA as directed by the probation officer.

The standard conditions of supervision (1-13) are imposed along with the following special conditions:
-The defendant shall obey the immigration laws and comply with the directives of immigration authorities.

-The defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. The defendant shall inform any other residents that the premises may be subject pursuant to this condition.

-The defendant is to report to the nearest probation office within 72 hours of release from custody.

-The defendant is to be supervised by the district of residence.

SPA-5

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
           Sheet 5 — Criminal Monetary Penalties

|  |  |
|---|---|
| | Judgment — Page __5__ of __6__ |

**DEFENDANT:**          MICHAEL JAMES
**CASE NUMBER:**     S1 1:10CR01293-01(RPP)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| **TOTALS** | $ 100.00 | $ | $ |

☐  The determination of restitution is deferred _____ . An *Amended Judgment in a Criminal Case* (AO 245C) will be after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

   If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |
| **TOTALS** | $ _____ $0.00 | $ _____ $0.00 | |

☐  Restitution amount ordered pursuant to plea agreement _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

   ☐  the interest requirement is waived for     ☐  fine   ☐  restitution.

   ☐  the interest requirement for     ☐  fine   ☐  restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**SPA-6**

AO 245B   (Rev. 06/05) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

| | |
|---|---|
| **DEFENDANT:** | **MICHAEL JAMES** |
| **CASE NUMBER:** | **S1 1:10CR01293-01(RPP)** |

Judgment — Page __6__ of __6__

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A  ☐   Lump sum payment of $_____ due immediately, balance due

      ☐  not later than_____ , or
      ☐  in accordance        ☐  C,   ☐  D,   ☐  E, or   ☐  F below; or

B  ☐   Payment to begin immediately (may be combined        ☐ C,        ☐ D, or        ☐ F below); or

C  ☐   Payment in equal_____ (e.g., weekly, monthly, quarterly) installments of _____ over a period of
      _____ (e.g., months or years), to _____ (e.g., 30 or 60 days) after the date of this judgment; or

D  ☐   Payment in equal_____ (e.g., weekly, monthly, quarterly) installments of _____ over a period of
      _____ (e.g., months or years), to _____ (e.g., 30 or 60 days) after release from imprisonment to a
      term of supervision; or

E  ☐   Payment during the term of supervised release will commence _____ (e.g., 30 or 60 days) after release from
      imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time;

F  X   Special instructions regarding the payment of criminal monetary penalties:
      Mandatory special assessment imposed, $100.00, is payable by 7/25/12.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

      Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several
      and corresponding payee, if appropriate.

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☐   The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.